NOT DESIGNATED FOR PUBLICATION

No. 114,708

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of

RICHARD A. QUILLEN.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed December 16, 2016. Reversed and remanded.

*Richard A. Quillen*, appellant pro se.

*Bryan C. Clark*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., SCHROEDER, J., and WALKER, S.J.

*Per Curiam*:  Richard A. Quillen was found to be a sexually violent predator as a result of a consent decree entered in 2006. He now appeals the district court's determination he was not eligible for a transitional release based on his 2013 or 2014 annual reviews, raising seven issues:  (1) He was entitled to a jury trial for his annual reviews; (2) the district court erred when it joined his 2013 and 2014 annual review hearings into one hearing; (3) there was insufficient evidence presented by the State to determine Quillen did not meet the requirements for transitional release; (4) the district court judge erred when he failed to recuse himself; (5) Quillen was erroneously denied an independent examination for his 2014 review; (6) his statutory and constitutional rights were violated when he was housed in the county jail during his annual review hearing; and (7) the district court admitted evidence that was not probative.

1

Because we find the district court's denial of Quillen's request for a jury trial was in violation of K.S.A. 2014 Supp. 59-29a08(c)(3), we reverse and remand. Given our order of remand, we determine it is prudent to address the other issues raised by Quillen in this appeal, except the sufficiency of the evidence, as our resolution might be helpful to the district court upon remand.

FACTS

In 2006, Quillen signed a consent decree stipulating to being a sexually violent predator pursuant to K.S.A. 59-29a01 *et seq.* As part of the consent decree, the State agreed to conduct a full hearing upon Quillen's petition pursuant to K.S.A. 59-29a08 to determine if Quillen is safe to be placed on transitional release and waived the requirement that Quillen first have a probable cause hearing.

In December 2013, Quillen filed a petition for annual review contesting his 2013 annual report. Without setting a hearing, the district court found Quillen should continue to be considered a sexually violent predator and should remain in the custody of the Secretary of the Kansas Department for Aging and Disability Services. Quillen appealed.

Quillen filed a motion for summary disposition before the Court of Appeals, and the State responded suggesting the court construe Quillen's motion for summary disposition as a motion for remand. The State suggested "that on remand, [Quillen] be given a hearing pursuant to K.S.A. 59-29a08, with all attendant rights, including the right to request a jury, the right to counsel, and the right to an independent examination." The Kansas Court of Appeals summarily reversed and remanded to the district court for a hearing held pursuant to K.S.A. 59-29a08 and acknowledged the State's agreement for Quillen to be given the right to a jury trial.

2

Upon remand, the district court appointed counsel for Quillen, authorized Quillen to retain the expert services of Dr. Robert Barnett, and eventually set the matter for a jury trial.

In September 2014, Dr. Barnett examined Quillen. In December 2014, Quillen filed a petition for annual review based on his 2014 annual report. The district court consolidated the hearings on both the 2013 and 2014 annual reports into one hearing. The district court did not appoint an independent examiner for the 2014 annual review.

The district court determined if Quillen chose to appear in person, he would have to stay in the county jail because Osawatomie State Hospital prevented the district court from admitting new patients into the facility. Quillen challenged the district court's decision to house him in the county jail, ultimately filing a separate lawsuit to enjoin the district court from housing him there. At the next hearing, the district court raised the pending lawsuit and asked if Quillen wanted the judge to recuse himself. Quillen responded, "No, I don't."

On July 15, 2015, 5 days before the jury trial was set to begin, the State argued, pursuant to Senate Bill 12, L. 2015, ch. 95,—K.S.A. 2015 Supp. 59-29a08—which took effect July 1, 2015, Quillen was not entitled to a jury trial. The State contended a sexually violent predator patient petitioning for transitional release never had the right to a jury trial, and the amendments to K.S.A. 2015 Supp. 59-29a08, clarified the right to a jury trial did not exist. Quillen argued his right to a jury trial vested prior to the amendments which did not indicate they were intended to apply retroactively. He also argued the change was substantive instead of procedural because it involved a vested constitutional right. The district court determined there was no right to a jury trial based on Senate Bill 12.

Quillen was transported from Larned to the Johnson County Jail prior to his trial beginning on Monday, July 20, 2015.

Because we are remanding this case for a new trial, we deem it unnecessary to set out all of the testimony presented to the district court. We will not address Quillen's challenge to the sufficiency of the evidence.

The district court found the State proved beyond a reasonable doubt Quillen's "mental abnormality and/or personality disorder remains such that he is not safe to be placed in transitional release, and that if [Quillen] was placed in transitional release, he would be likely to engage in acts of sexual violence." The district court denied Quillen's request for transitional release as a result of his 2013 and 2014 annual reviews. Quillen timely appealed.

ANALYSIS

*Quillen was entitled to a jury trial.*

Effective July 1, 2015, Senate Bill 12, L. 2015 ch. 95, heavily revised the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 *et seq.* Prior to July 1, 2015, K.S.A. 2014 Supp. 59-29a08(c)(3) stated, in part: "At either hearing, the committed person shall be entitled to be present and *entitled to the benefit of all constitutional protections that were afforded the person at the initial commitment proceeding.* The attorney general shall represent the state and shall have a right to a jury trial . . . ." (Emphasis added.)

K.S.A. 2015 Supp. 59-29a08(c) states, in relevant part: "The committed person shall be entitled to be present and entitled to the benefit of all constitutional protections that were afforded the person pursuant to K.S.A. 59-29a06, and amendments thereto."

4

K.S.A. 2015 Supp. 59-29a06 governs the initial commitment proceeding. K.S.A. 2015 Supp. 59-29a06(d), which was not revised by Senate Bill 12, states, in relevant part: "The person, the attorney general, or the judge shall have the right to demand that the trial be before the jury." However, the legislature revised K.S.A. 2015 Supp. 59-29a06(f), which now states: "Notwithstanding any other provision of law to the contrary, the provisions of this section relating to jury trials shall not apply to proceedings for annual review or proceedings on a petition for transitional release, conditional release or final discharge."

Based on the 2015 amendments, the district court ruled 5 days before the jury trial was set to begin that Quillen was not entitled to a jury trial for his annual review hearing. Quillen argues the district court erred when it retroactively applied the provisions of Senate Bill 12 to divest him of his right to a jury trial. He argues nothing in Senate Bill 12 indicates it was intended to apply retroactively and his right to a jury trial was a vested right not subject to retroactivity. In contrast, the State argues Quillen was not entitled to a jury trial because the amendments clarified the language of the prior statute and intended the statute be retroactively applied.

Retroactive application of a statute is an issue of statutory interpretation over which appellate courts have unlimited review. See *State v. Brownlee*, 302 Kan. 491, 508, 354 P.3d 525 (2015). As a general rule, a statute operates prospectively unless (1) the statutory language clearly indicates the legislature intended the statute to operate retrospectively, or (2) the change is procedural or remedial in nature. *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 841, 367 P.3d 1252 (2016). However, a statute may not be applied retrospectively if it would prejudicially affect a party's substantive or vested rights even if the legislature intended for it to apply retrospectively. See *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 460, 264 P.3d 102 (2011).

5

*Whether the legislature intended the revisions to apply retrospectively*

Nothing in the language of Senate Bill 12 clearly indicates the legislature intended for K.S.A. 2015 Supp. 59-29a06(f) to apply retroactively. Without citing any authority supporting its argument, the State contends the broad language of the statute—"[n]otwithstanding any other provision of law to the contrary"—indicates the legislature intended K.S.A. 2015 Supp. 59-29a06(f) apply retroactively.

*Whether the amendment is procedural or remedial in nature*

"Procedural laws relate to the '"machinery for carrying on the suit, including pleading, process, evidence, and practice" and "the mode or proceedings by which a legal right is enforced, that which regulates the formal steps in an action."'" *Brennan*, 293 Kan. at 461. In contrast, "[s]ubstantive laws give or define the right, give the right or denounce the wrong, or create liability against a defendant for a tort committed." 293 Kan. at 461.

Under very similar circumstances, a panel of this court has held the right to a jury trial is a substantive right. *State v. Chapman*, 15 Kan. App. 2d 643, 646, 814 P.2d 449 (1991). In March 1990, Chapman received a traffic citation for speeding. At the time, K.S.A. 1989 Supp. 22-3404(1) provided:

> "The trial of misdemeanor and traffic infraction cases shall be to the court unless a jury trial is requested in writing by the defendant not later than seven days after first notice of trial assignment is given to the defendant or such defendant's counsel. The time requirement provided in this subsection regarding when a jury trial shall be requested may be waived in the discretion of the court upon a finding that imposing such time requirement would cause undue hardship or prejudice to the defendant."

Chapman filed a written demand for jury trial. The legislature amended K.S.A. 1990 Supp. 22-3404 effective July 1, 1990, adding: "The trial of traffic infraction cases

shall be to the court." Consequently, the district court denied Chapman's request for a jury trial and Chapman appealed.

The panel noted the Sixth Amendment to the United States Constitution and § 5 of the Kansas Constitution Bill of Rights both guaranteed the right to a jury trial, though the panel acknowledged some petty crimes were not subject to the Sixth Amendment jury trial provision. *Chapman*, 15 Kan. App. 2d at 645. In addition, relying on *State v. Sylva*, 248 Kan. 118, 804 P.2d 967 (1991), the panel stated: "Arguably, if a statute detailing the procedure to be used for sentence modification is substantive, then a statute conferring a right to jury trial should also be substantive." *Chapman*, 15 Kan. App. 2d at 646.

While *Chapman*'s circumstances are similar, it is also distinguishable. *Chapman* was a criminal proceeding. Sexually violent predator commitment proceedings are civil actions, not criminal proceedings. See *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997). The Sixth Amendment to the United States Constitution only guarantees the right to a jury trial in criminal proceedings. In addition, while the Seventh Amendment guarantees the right to a jury trial in certain civil cases, the Seventh Amendment has never been incorporated through the Due Process Clause of the Fourteenth Amendment and does not apply to state court proceedings. U.S. Const. amend. VI and VII. Similarly, in a civil context, § 5 of the Kansas Constitution Bill of Rights only guarantees the same right to a jury trial as existed at common law. *Waggener v. Seever Systems, Inc.*, 233 Kan. 517, 520, 664 P.2d 813 (1983) (quoting *Karnes Enterprises, Inc. v. Quan*, 221 Kan. 596, 600-01, 561 P.2d 825 [1977]).

Statutory amendments extinguishing causes of action have recently been found by our Supreme Court to be substantive in civil cases:

"In [*Resolution Trust Corp. v.*] *Fleischer,* the issue was whether the holder of an accrued tort action had a vested property right in that cause of action before it reached final

7

judgment. This court held there was a vested right under the facts. 257 Kan. [360,] 374[, 892 P.2d 497 (1995)]. In *Kelly v. VinZant,* 287 Kan. 509, [521,] 197 P.3d 803 (2008), this court held an amendment eliminating a cause of action under the Kansas Consumer Protection Act against a medical provider for negligence was substantive because the amendment excluded a group previously liable under that Act." *Brennan*, 293 Kan. at 461.

In this case, the right to a jury trial is not substantive. Much of the rationale supporting the *Chapman* court's determination that the amendment at issue was substantive simply does not apply. Nor do the amendments affect a vested property right as the Kansas Supreme Court found in *Fleischer* and *Kelly*. Similarly, the amendments are not remedial; they do not affect the remedy afforded Quillen. Accordingly, in this case, the amendments to K.S.A. 2015 Supp. 59-29a08 and K.S.A. 2015 Supp. 59-29a06 must be procedural in nature. However, even if the legislature intended for a statute to apply retroactively, if retroactive application of a statute prejudicially affects a party's substantive or vested rights, the statute cannot apply retroactively. *Brennan*, 293 Kan. at 460.

*Does Quillen have a vested right to a jury trial?*

Since the amendments to K.S.A. 2015 Supp. 59-29a08 and K.S.A. 2015 Supp. 59-29a06 are procedural, the amendments apply retroactively unless they prejudice Quillen's vested rights. "Vested rights" is a conclusory term describing "rights that cannot be abolished by retroactive legislation." *Brennan*, 293 Kan. at 462. Three factors are considered to determine whether retrospective application of a law violates a party's vested rights: "'(1) the nature of the rights at stake (*e.g.,* procedural, substantive, remedial), (2) how the rights were affected (*e.g.,* were the rights partially or completely abolished by the legislation; was any substitute remedy provided), and (3) the nature and strength of the public interest furthered by the legislation.'" 293 Kan. at 460 (quoting

8

*Fleischer*, 257 Kan. at 369). The first factor (nature of the right) is not determinative and must be balanced against the other factors. *Brennan*, 293 Kan. at 462.

In his brief, Quillen does not conduct the vested rights analysis identified in *Brennan*. Instead, he simply concludes: "In this case in 2013 and 2014 the law, K.S.A. [2014 Supp.] 59-29a08 and K.S.A. [2014 Supp.] 59-29a06, clearly and unequivocally granted Respondent the right to a jury trial. As such there was a vested interest that was taken away by retroactively applying the new law."

### *The nature of the right at stake*

The first factor to consider is "'the nature of the rights at stake (*e.g.,* procedural, substantive, remedial).'" *Brennan*, 293 Kan. at 460. As previously discussed, the nature of the rights at stake here are procedural, not substantive. However, the nature of the right is not determinative and must be balanced against the remaining factors. 293 Kan. at 462.

### *How the right was affected*

The second factor to consider is "'how the rights were affected (*e.g.,* were the rights partially or completely abolished by the legislation; was any substitute remedy provided).'" 293 Kan. at 460. In Quillen's prior appeal (case No. 111,585), the State suggested the appeal should be remanded and Quillen be given a hearing which included the right to request a jury. The amendment to K.S.A. 2015 Supp. 59-29a06(f) completely abolished the right to a jury trial for an annual review hearing after July 1, 2015. The amendment does not abolish, however, the right to an annual review hearing; it established the district court as the sole trier of fact.

*The nature and strength of the public interest furthered by the legislation*

The State argues the public "has an interest in the efficiencies that can be achieved by clarifying that the right to a jury trial under the [KSVPA] does not extend to annual review hearings." However, prior to the 2015 amendments, K.S.A. 2014 Supp. 59-29a08 only provided for a jury trial in very limited circumstances. Pursuant to K.S.A. 2014 Supp. 59-29a08(c)(1), the district court first had to hold a hearing and determine probable cause existed to believe "the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release." A sexually violent predator was only entitled to a jury trial if the district court determined probable cause existed to believe the person was safe to be placed in transitional release or if, as here, the State waived the probable cause determination. The public interest in efficiencies gained from removing the right to a jury trial for annual review hearings is minimal.

The right at stake is procedural, not substantive or remedial, and suggests the right to a jury trial for an annual review hearing is not a vested right. However, the amendments completely abolished the right to a jury trial for an annual review hearing—a right the State agreed Quillen be given upon remand of his prior appeal. Still, the amendments do provide a substitute remedy: the right to an annual review hearing before the district court. This weighs in favor of finding the right to a jury trial was a vested right. In addition, the public's interest in the efficiencies obtained through retroactive application of the amendment are minimal; this factor also weighs in favor of finding Quillen's right to a jury trial was a vested right.

Whether Quillen was entitled to a jury trial for his annual review hearings is a very close call. Nothing in the amendments indicate they were intended to apply retroactively, but the amendments seem to be procedural and therefore subject to retroactive application. Weighing the factors to determine whether Quillen's right to a jury trial was a

10

vested right prohibiting retroactive application of the amendments is similarly close. However, analysis of the vested rights factors weighs in favor of finding Quillen's right to a jury trial was a vested right. Given these specific facts, Quillen was entitled to a jury trial for his 2013 and 2014 annual review hearings.

While acknowledging this is a close call, we are also mindful of three additional factors. One, the State agreed Quillen could have a jury trial on remand from the Kansas Court of Appeals; two, in the remand order, the Court of Appeals said he could have a jury trial upon request, which he did; and three, this case was filed by Quillen on December 23, 2013, when he clearly had a right to a jury trial and was ultimately set for trial on July 20, 2015. Had the trial been set any time before July 1, 2015, there is no doubt Quillen would have had a statutory right to a jury trial. The district court erred when it canceled the jury trial and conducted a bench trial.

*No error to join Quillen's 2013 and 2014 annual reviews into one trial.*

Quillen argues the district court erred when it joined his 2013 and 2014 annual reviews into a single trial. He argues the district court's decision prejudiced his defense and violated his substantive due process rights.

Interpretation of statute is a question of law over which this court has unlimited review. *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the

11

legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery*, 304 Kan. at 409.

K.S.A. 2015 Supp. 59-29a08(c) states, in relevant part: "If the court at the annual review hearing determines that probable cause exists to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release, then the court shall set *a* hearing on the issue." (Emphasis added.)

Quillen cites *In re Care & Treatment of Sporn*, 289 Kan. 681, 688-89, 215 P.3d 615 (2009), and *Burch v. Lynch*, No. 108,798, 2013 WL 2972822 (Kan. App. 2013) (unpublished opinion), to support his argument. However, both cases are inapposite.

*Sporn* does not address transitional release hearings, much less require separate hearings for each year. In *Sporn*, a jury found Sporn was not a sexually violent predator at his initial commitment proceeding in 2005. After Sporn violated his postrelease supervision by viewing pornography on his computer, the State again attempted to commit him as a sexually violent predator. Relying on a California case, *Turner v. Superior Court*, 105 Cal. App. 4th 1046, 130 Cal. Rptr. 2d 300 (2003), the Kansas Supreme Court determined dismissal was appropriate because the State's 2007 petition made no allegation Sporn's mental status had materially changed since his favorable jury verdict. *Sporn*, 289 Kan. at 688-89.

Similarly, *Burch* does not support Quillen's argument. Burch, who was committed at Larned, filed a petition for transitional release which was denied and he appealed. During the pendency of his appeal, Burch filed numerous motions in the district court, but the district court notified Burch it was without jurisdiction to consider his motions while his appeal was pending. The panel addressed the district court's determination that it lacked jurisdiction during the pendency of Burch's appeal, stating:

12

"We understand the Wyandotte District Court's logic, but find its position to be erroneous because the individual annual review hearings present an appealable situation under the KSVPA. We liken the situation to a parole inmate who appeals the denial of parole. If the appellate process carries on until the next parole hearing, the hearing would not be postponed simply because the infirmities of the prior hearing are still on appeal." 2013 WL 2972822, at *4.

*Burch* neither states nor implies each annual review hearing must occur separately. Instead, the panel simply determined the district court does not lose jurisdiction to hear subsequent motions when a prior year's petition for transitional release is appealed.

The plain language of K.S.A. 2015 Supp. 59-29a08(c) does not support Quillen's argument. K.S.A. 2015 Supp. 59-29a08(c) requires the district court set *a* transitional release hearing if a respondent's annual review hearing indicates probable cause exists to believe that the person is safe to be placed in transitional release. Nothing in the statute requires separate evidentiary hearings for each annual review. Instead, the statute merely requires the court set *an* evidentiary hearing for the annual review. The district court complied with the statute when it consolidated Quillen's transitional release hearings for 2013 and 2014 into one hearing.

*No denial of substantive due process*

Quillen also argues the district court denied him substantive due process because his 2013 annual review was delayed more than a year. Despite Quillen's contention to the contrary, nothing in the KSVPA requires the transitional release hearing to be heard prior to the expiration of the 1-year period of the annual review. Further, Quillen cites no authority to support his argument that having one annual review "still be pending when another annual review comes up" violates a person's due process rights, especially under the unique facts of this case. Failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority

13

is akin to failing to brief the issue. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015).

Upon remand, the district court acted quickly to ensure Quillen's annual review was not unnecessarily delayed. The mandate on the Court of Appeals' order for remand was filed on July 9, 2014. The district court appointed counsel for Quillen on July 11, 2014, and appointed Dr. Barnett on August 19, 2014. During the October 15, 2014, conference call, Quillen indicated he just received an independent evaluation from Dr. Barnett. On December 1, 2014, the district court heard motions in limine and scheduled a jury trial for March 9-10, 2015. The jury trial was continued at Quillen's request because Dr. Barnett was unavailable on March 9-10, 2015. The new trial date set by the court was July 20-21, 2015.

Based on the facts of this case, the district court did not err or violate Quillen's substantive due process when it consolidated his 2013 and 2014 transitional release hearings. The 2013 hearing had been postponed as a result of Quillen's appeal that resulted in a remand from the Court of Appeals for a trial on the merits.

*Quillen was not denied a fair and impartial tribunal.*

Quillen argues he was denied a fair and impartial tribunal because the district court judge did not recuse himself. The State argues this issue is not properly before this court because Quillen did not raise this issue to the district court and has not explained why he failed to do so. While Quillen did not raise the issue before the district court, the issue is properly before this court since the district court raised the issue *sua sponte*:

> "THE COURT:  And Mr. Quillen appears by phone. Mr. Quillen, first of all, I want to make sure that you filed a lawsuit, and I think I was named in it. That doesn't

14

bother me because I think what you were asking for is actually clarification of the law. Do you want me to recuse?"

Quillen responded, "No, I don't."

Now Quillen claims the court's failure to recuse was error. The district court did exactly what he requested. Quillen did not raise the issue again. We find there was no error here, but if there was error, then the invited error rule applies. When a party has invited error, the error cannot be complained of on appeal. See *Thoroughbred Assocs. v. Kansas City Royalty Co.*, 297 Kan. 1193, 1203, 308 P.3d 1238 (2013). Furthermore, despite Quillen's claim that he was denied a fair and impartial review, the record indicates the district court judge was quite sympathetic with Quillen's arguments. Quillen was not denied a fair and impartial tribunal.

Pursuant to K.S.A. 2015 Supp. 59-29a08(a), the district court has discretion to appoint an independent examiner to determine whether probable cause exists to believe the committed person is safe to be placed in transitional release. However, the district court shall appoint an expert if, after that determination, the committed person requests one. K.S.A. 2015 Supp. 59-29a08(c). In Quillen's consent decree and stipulation, the State waived the probable cause determination. Accordingly, since he requested an independent examination for the 2014 annual review process, Quillen was entitled to have one, and the district court erred when it decided it would not appoint one.

*Housing Quillen in the county jail.*

On July 17, 2015, Quillen was transported from Larned State Security Hospital to the jail in Johnson County for his trial the following Monday. He returned to Larned State Security Hospital on July 22, 2015.

15

Quillen argues housing him in the county jail while he attended his annual review trial violated the KSVPA and his constitutional rights. The State initially argues Quillen waived his challenges to being held in the county jail when he chose to attend his transitional release hearing in person despite the district court informing him it would require a brief stay in the county jail. The State also argues housing Quillen in the county jail did not violate the KSVPA or his constitutional rights.

Despite the State's argument, Quillen was entitled to attend the hearing in person. Based on the State's waiver of the probable cause hearing in Quillen's consent decree and stipulation, Quillen was entitled to an evidentiary hearing pursuant to K.S.A. 2015 Supp. 59-29a08(c). It states, in relevant part: "The committed person *shall be entitled to be present* and entitled to all of the constitutional protections that were afforded the person" at the initial commitment proceeding. (Emphasis added.) Although the district court gave Quillen the opportunity to appear by phone or by video instead of appearing in person, Quillen did not waive his challenge to being housed in the county jail by choosing to appear in person.

*Statutory Arguments*

Quillen makes two statutory arguments. First, he argues the KSVPA does not allow the use of county jails after a person is deemed a sexually violent predator. He also argues the district court did not have the authority to transfer custody of him from the Secretary of the Kansas Department of Aging and Disability Services to the Johnson County Sheriff's Office. Neither argument is persuasive.

Quillen correctly argues K.S.A. 2015 Supp. 59-29a05(d), which allows a person to be housed in "an appropriate secure facility, including, but not limited to, a county jail," only applies to the time period between the probable cause determination before an initial commitment and when a jury determines the person is a sexually violent predator.

16

K.S.A. 2015 Supp. 59-29a08, the annual review statute, does not indicate a county jail may be used during the transitional release hearing. However, K.S.A. 2015 Supp. 59-29a12(b) states:

> "When a court orders a person committed to the secretary's custody under any provision of this act to appear at a court proceeding, *the county where such court is located shall be responsible for the transportation, security and control of such person and all costs involved.* The secretary shall not be required to provide an employee to travel with the committed person." (Emphasis added.)

In addition, K.S.A. 2015 Supp. 59-29a07(b) states sexually violent predators "shall be kept in a secure facility" at all times. While K.S.A. 2015 Supp. 59-29a12(b) does not specifically indicate a person may be housed in the county jail, it places the burden of securing and controlling the person—in a secure facility—on the county, and thus, it is the sheriff's duty to determine where or what kind of secure facility to use.

K.S.A. 2015 Supp. 59-29a12(b) also resolves Quillen's argument regarding transfer of custody. Contrary to Quillen's contention, the KSVPA does contain a provision transferring custody of a committed person to the county when a district court orders the committed person's attendance at a court proceeding.

Quillen argues the he was denied his statutory rights when he was housed in the county jail for his transitional release hearing. His brief identifies the rights guaranteed by statute and concludes:  "None of the rights protected by either the Fourteenth Amendment [to the United States Constitution] or the provisions of K.S.A. [2015 Supp.] 59-29a22(c) were provided while Respondent was in the County Jail, nor will they be provided if confined there again." Quillen provides no analysis beyond this conclusory statement. A point raised incidentally in a brief and not argued therein is deemed waived and abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

17

*Constitutional arguments*

Quillen argues housing him in the county jail so he could attend his transitional release hearing violated his constitutional rights. Specifically, he argues the KSVPA is unconstitutional because a person committed under the KSVPA is denied the same rights as a person committed under other civil commitment statutes. He similarly argues the use of a county jail is unconstitutional because it does not bear any reasonable relation to the purpose of confinement, is more restrictive than that for criminal counterparts, and is not the least restrictive means available. Finally, he argues he was denied due process. These arguments are without merit.

Citing *Kansas v. Hendricks*, 521 U.S. 346, 368-69, 117 S. Ct. 2072, 138 L. Ed. 2d 501 (1997), Quillen argues the United States Supreme Court held the KSVPA "would remain [c]onstitutionally valid as long as it remained equal to and provided the same conditions of confinement and rights as all other civil commitments in Kansas." However, that was not the holding in *Hendricks*. Instead, the *Hendricks* Court merely held the KSVPA was nonpunitive because

> "the State has 'disavowed any punitive intent'; limited confinement to a small segment of particularly dangerous individuals; provided strict procedural safeguards; directed that confined persons be segregated from the general prison population and afforded the same status as others who have been civilly committed; recommended treatment if such is possible; and permitted immediate release upon a showing that the individual is no longer dangerous or mentally impaired." 521 U.S. at 368-69.

Quillen misstates the holding in *Hendricks* and cites no other authority to support this argument.

Quillen next argues housing him in the county jail has no reasonable relation to the purpose of his confinement because it promotes punitive confinement. He argues use of

18

the jail constituted punishment because a jail "can only be a punitive environment" and does not provide treatment the legislature deemed necessary. Undoubtedly, permanently housing a sexually violent predator in a county jail would be presumptively punitive. See *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) ("Therefore when a SVPA detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). However, Quillen does not explain how temporarily housing him in the county jail so he could attend his transitional release hearing—and possibly achieve transitional release—promoted punishment. In fact, Quillen's brief confinement for a few days at the county jail was reasonably related to the purpose of his confinement—determining whether his mental condition had changed such that he was eligible for conditional release.

Similarly, Quillen argues housing him in the county jail subjected him to more restrictive conditions than a criminal because he was not entitled to "bail or any other form of pre-trial or pre-proceeding release." This argument is flawed because it compares a pretrial criminal defendant—someone who has not been convicted—to someone who has been adjudicated a sexually violent predator. Instead, a pretrial criminal defendant is more akin a person awaiting a sexually violent predator commitment proceeding. Quillen does not identify how his rights were more restricted than his criminal counterpart—someone serving his or her sentence in the county jail.

Finally, housing Quillen in the jail so he could attend his transitional release hearing in person was the least restrictive means available to secure his appearance. Quillen contends he could have been housed at Osawatomie State Hospital. The district court considered placing Quillen at Osawatomie, but the district court was prevented from placing individuals at Osawatomie because the facility was unavailable. The district court considered all available options, even offering Quillen the opportunity to stay in

Larned and appear by phone or video. Housing Quillen in the jail was the only secure facility available to honor his request to attend the transitional release hearing.

Quillen's brief stay at the county jail so he could attend his review hearing in person did not violate his statutory or constitutional rights.

*Evidence of Quillen's nonparticipation in treatment was probative.*

Quillen argues the district court erred when it admitted evidence related to his participation—or lack thereof—in treatment. He argues the evidence was not probative for the elements necessary to continue his confinement. The State argues evidence of Quillen's nonparticipation in treatment was relevant to determine whether Quillen would be dangerous if placed on transitional release.

Generally speaking, all relevant evidence is admissible. K.S.A. 60-407(f). K.S.A. 60-401(b) defines relevant evidence as "evidence having any tendency in reason to prove a material fact." This definition encompasses two elements:  a materiality element and a probative element. Standards of review for each element vary. Evidence is material when the fact it supports is in dispute or in issue in the case. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). The appellate standard of review for materiality is de novo. *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). Evidence is probative if it has any tendency to prove any material fact. *State v. Dupree*, 304 Kan. 43, 63, 371 P.3d 862 (2016). An appellate court reviews the district court's assessment of the probative value of evidence under an abuse of discretion standard. *Page*, 303 Kan. at 550-51.

On appeal, Quillen only argues the evidence of his nonparticipation in treatment was nonprobative; he does not argue it was immaterial. An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). Accordingly, we will only consider whether the

district court abused its discretion when it admitted evidence of Quillen's nonparticipation in treatment as probative. A judicial action constitutes an abuse of discretion if the action (1) is arbitrary, fanciful, or unreasonable, *i.e.,* if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.,* if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

As previously stated, the State has the burden to "prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be placed in transitional release and if transitionally released is likely to engage in acts of sexual violence." K.S.A. 2015 Supp. 59-29a08(c).

Testimony regarding Quillen's nonparticipation in treatment was probative because it tended to show Quillen had not completed the program steps and was not safe to be placed in transitional release. A reasonable person could agree Quillen's nonparticipation in treatment was probative. The district court did not abuse its discretion when it admitted evidence of Quillen's noncompliance with the treatment program.

Reversed and remanded.

\* \* \*

MALONE, C.J., concurring in part and dissenting in part: I concur with the majority opinion on all issues except for its conclusion that Richard A. Quillen had a vested right to a jury trial for his annual review hearing. I would hold that Quillen did not have a vested right to a jury trial and there was sufficient evidence presented at the bench trial to determine that Quillen did not meet the requirements for transitional release.

21

I begin by noting that Quillen has no constitutional right to a jury trial for any hearing under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01 *et seq.* Commitment proceedings under the KSVPA are civil actions, not criminal proceedings. *Kansas v. Hendricks*, 521 U.S. 346, 117 S. Ct. 2072, 128 L. Ed. 2d 501 (1997). The United States Constitution guarantees the right to a jury trial in criminal proceedings. U.S. Const. amend. VI. Trial by jury is guaranteed in the United States Constitution in suits at common law where the value in controversy exceeds twenty dollars. U.S. Const. amend. VII. Similarly, in a civil context, § 5 of the Kansas Constitution Bill of Rights only guarantees the same right to a jury trial as existed at common law. *Waggener v. Seever Systems, Inc.*, 233 Kan. 517, 520, 664 P.2d 813 (1983) (quoting *Karnes Enterprises, Inc. v. Quan*, 221 Kan. 596, 600-01, 561 P.2d 825 [1977]).

The Kansas Legislature has granted a statutory right to a jury trial under the KSVPA at the initial commitment proceeding. K.S.A. 2015 Supp. 59-29a06(d), which applies to the initial commitment proceeding, states, in relevant part:  "The person, the attorney general or the judge shall have the right to demand that the trial be before the jury." But under the KSVPA, it was never clear whether a committed person was entitled to a jury trial at an annual review hearing. Prior to July 1, 2015, K.S.A. 2014 Supp. 59-29a08(c)(3), which applied to annual review hearings, stated, in part:  "At the hearing, the committed person shall be entitled to be present and entitled to the benefit of all *constitutional* protections that were afforded the person at the initial commitment proceeding. The attorney general shall represent the state and shall have a right to a jury trial . . . ." (Emphasis added.) Because the committed person never had a *constitutional* right to a jury trial at the initial commitment proceeding, arguably only the State was provided with the statutory right to a jury trial at an annual review hearing under K.S.A. 2014 Supp. 59-29a08(c)(3), prior to its amendment.

Effective July 1, 2015, the legislature revised K.S.A. 2015 Supp. 59-29a06(f), which now states:  "Notwithstanding any other provision of law to the contrary, the

22

provisions of this section relating to jury trials shall not apply to proceedings for annual review or proceedings on a petition for transitional release, conditional release or final discharge." K.S.A. 2015 Supp. 59-29a08(c), governing the annual review hearing, states, in relevant part: "The committed person shall be entitled to be present and entitled to the benefit of all constitutional protections that were afforded the person pursuant to K.S.A. 59-29a06, and amendments thereto." The amendment removed the State's right to request a jury trial at an annual review hearing. Reading these two statutes together, it is clear that after July 1, 2015, no party is entitled to a jury trial at an annual review hearing, but the committed person is entitled to be present at the annual review hearing and is entitled to all constitutional protections afforded to the person at the initial commitment proceeding.

The majority concludes, and I agree completely, that the amendments to K.S.A. 2015 Supp. 59-29a06 and K.S.A. 2015 Supp. 59-29a08 are procedural in nature. "Procedural laws relate to the '"machinery for carrying on the suit, including pleading, process, evidence, and practice" and "the mode or proceedings by which a legal right is enforced, that which regulates the formal steps in an action."'" *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 461, 264 P.3d 102 (2011). In contrast, "substantive laws give or define the right, give the right or denounce the wrong, or create liability against a defendant for a tort committed." 293 Kan. at 461.

Generally, a procedural statutory amendment is applied retrospectively to pending cases. See *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 841, 367 P.3d 1252 (2016). However, an amended statute may not be applied retrospectively if it would prejudicially affect a party's vested rights. See *Brennan*, 293 Kan. at 460. This brings us to the question of whether Quillen had a vested right to a jury trial for his annual review hearing. The majority concludes that he did, but I disagree.

23

A vested right is one "'so fixed that it is not dependent on any future act, contingency or decision to make it more secure.' [Citation omitted.]" *State v. Dupree*, 304 Kan. 43, 52, 371 P.3d 862 (2016). In determining whether a right is vested, Kansas courts consider three factors: "'(1) the nature of the rights at stake (*e.g.,* procedural, substantive, remedial), (2) how the rights were affected (*e.g.,* were the rights partially or completely abolished by the legislation; was any substitute remedy provided), and (3) the nature and strength of the public interest furthered by the legislation.'" *Brennan*, 293 Kan. at 460; see *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 222, 73 P.3d 753 (2003).

*The nature of the right at stake*

The first factor to consider is "'the nature of the right at stake (*e.g.*, procedural, substantive, remedial).'" *Brennan*, 293 Kan. at 460. As the majority opinion concludes, the nature of the right at stake here is procedural, not substantive. However, the nature of the right is not determinative and must be balanced against the other factors, as the mere distinction between procedural, substantive, and remedial rights does not end the analysis. *Owen Lumber*, 276 Kan. at 223.

*How the right was affected*

The second factor to consider is "'how the rights were affected (*e.g.,* were the rights partially or completely abolished by the legislation; was any substitute remedy provided).'" *Brennan*, 293 Kan. at 460. Here, the amendment to K.S.A. 2015 Supp. 59-29a06(f) abolished the right to a jury trial for annual review hearings. The KSVPA, however, still provides for the right to a jury trial at the initial commitment proceeding. K.S.A. 2015 Supp. 59-29a06(a). Furthermore, the amendment did not do away with the right to an annual review hearing; instead, the court is now the factfinder rather than a jury. K.S.A. 2015 Supp. 59-29a08(a).

24

*The nature and strength of the public interest*

Prior to the amendment, a committed person was entitled to an annual review hearing only if the court first found that there was probable cause that the person was "so changed that the person [was] safe to be placed in transitional release." K.S.A. 2014 Supp. 59-29a08(c)(1). If the court did find such probable cause, then it was to hold a hearing, where the committed person was entitled to "all constitutional protections that were afforded . . . at the initial commitment proceeding." K.S.A. 2014 Supp. 59-29a08(c)(3). Now, the only change in the current statute is that if the court finds probable cause that the committed person can safely be placed in transitional release, the court is to conduct a hearing where it is the factfinder instead of the jury; all other protections such as the ability to retain experts or have them appointed, and the right to an attorney remain. K.S.A. 2015 Supp. 59-29a08(a), (c).

The elimination of jury trials for annual review hearings under the KSVPA is a relatively minimal burden when compared to the public interest furthered by the legislation. The substitution of the court as the factfinder in the annual review proceeding expedites the process of determining whether an individual remains a sexually violent predator. The public has an interest in judicial efficiency, especially when public safety and protection from sexually violent persons is at issue. See *In re Care & Treatment of Hunt*, 32 Kan. App. 2d 344, 364-65, 82 P.3d 861 (2004) (public has an interest in prompt and orderly proceedings to determine sexually violent predator status).

Our Supreme Court's recent decision in *Dupree* provides a good analysis of whether a statutory amendment prejudicially affects a party's vested rights. In 2012, the Kansas Legislature eliminated the remedy for a violation of a criminal defendant's statutory right to a speedy trial in certain circumstances. See K.S.A. 2012 Supp. 22-3402(g). The defendant in *Dupree* claimed that his statutory speedy trial right had been violated *before* the amendment eliminating the remedy went into effect on July 1, 2012.

25

See 304 Kan. at 51. However, after analyzing the three factors set forth in *Owen Lumber*, the court concluded that the speedy trial statute does not create a vested right; the legislature, which created the statutory right to a speedy trial, could eliminate the right at its will; and the statutory amendment in question was procedural in nature and retroactively applied to the defendant's case. See 304 Kan. at 53-57.

If the defendant's statutory right to a speedy trial in *Dupree*, which would have resulted in the dismissal of criminal charges had a violation of the right been proven, did not constitute a vested right under the analysis employed by our Supreme Court, then I conclude under the same analysis that Quillen did not have a vested right to a jury trial at his annual review hearing. The legislature eliminated the statutory right to a jury trial at an annual review hearing, effective July 1, 2015. The statutory amendment was procedural in nature and it was within the legislature's power to eliminate the right. As it happens, through no fault or delay caused by the State, Quillen's annual review hearing was scheduled to take place on July 20, 2015. The district court correctly decided that neither party had the right to a jury trial for the annual review hearing; thus, the court properly conducted the hearing as a bench trial.

The majority opinion did not review the sufficiency of the evidence presented at the bench trial. As it turns out, the State presented sufficient evidence for a rational factfinder to determine that Quillen did not meet the requirements for transitional release. Keri Applequist, a licensed clinical psychotherapist, testified that she prepared Quillen's 2013 and 2014 annual reports. Applequist agreed with Quillen's diagnosis of pedophilia and a personality disorder not otherwise specified with antisocial and borderline features. She testified that his condition was unchanged from 2013 to 2014. Applequist testified she believed Quillen would likely reoffend if placed in transitional release.

Jenese Boger, a licensed social worker who was Quillen's therapist, and Dennis Smith, a program consultant, both testified Quillen made no effort to progress in his

26

treatment, preferring to stay at stage 3 of the sexual predator treatment program. Matthew Brous, a polygraph examiner, testified that Quillen admitted to masturbating to a fantasy of a previous victim. Quillen testified at the hearing and acknowledged that he did not want to advance to stage 4 of the program because he believed it was more restrictive at higher levels. He also admitted to masturbating to a fantasy of a previous victim.

Dr. Robert Barnett, Quillen's expert, believed that Quillen had the ability to control his dangerous behavior and was unlikely to engage in acts of sexual violence if placed in transitional release. Despite Dr. Barnett's testimony, the district court found, beyond a reasonable doubt, that Quillen's mental abnormality or personality disorder remained such that it was not safe to place him in transitional release, and that, if placed in transitional release, Quillen would be likely to engage in acts of sexual violence.

In sum, Quillen received a fair hearing for his 2013 and 2014 annual reviews and there was sufficient evidence for the district court to determine that Quillen did not meet the requirements for transitional release. There should be no need to remand this case for a jury trial for the same annual review hearing because our legislature eliminated that right, effective July 1, 2015, and that statutory amendment applies to Quillen's case.